## Case No. 4,052.

### In re DOYLE.

[3 N. B. R. 782 (Quarto, 190).] [1]

District Court, D. Rhode Island. 1870.

BANKRUPTCY—DISCHARGE — PRIMA FACIE FRAUD.

Where eleven objections to a discharge were filed and pressed by opposing creditors, and under each an issue of fact was raised ,and evidence and argument submitted, *held*, the opposing creditors having established a prima facie case of fraud, the petitioner is not entitled to his discharge.

[In the matter of Philip A. Doyle, a bankrupt.]

Eames & Payne, for opposing creditors.
Blake & Gorman, for petitioner.

KNOWLES, District Judge. The petitioner, on his own application, was declared a bankrupt on the 29th of December, 1868. His petition for a discharge was filed on the 9th of November, 1869, and specifications of two creditors, in opposition, were filed on the 22d of January, 1870. The hearing upon these specifications was, by consent, postponed from time to time until May 4, on which day, and on several subsequent days, including the 10th of June, the parties were fully heard.

As the case was submitted to me upon both law and fact, it seems essential, in delivering my judgment, simply to enunciate or indicate my rulings upon the points of law, if any, raised before me, and to announce my findings upon the issues of fact. An elaborate discussion of the facts proven, in vindication of those findings, I deem neither necessary nor expedient. We listen to no argument from a jury in support of the verdicts they render, and I fail to see why, when parties elect to constitute the court, pro hac vice, a jury, a labored argument in support of its conclusions of fact should be inflicted upon parties and counsel. Upon parties and counsel, I say, for to them only can such an argument with propriety be addressed, inasmuch as they only can be presumed to feel any interest in the matter, and they moreover, generally speaking, are the only persons who can know enough of the case, as it chanced to be presented to the court upon the proofs and argument, to be authorized even to form an opinion, as to the soundness or unsoundness, the justice or injustice of the decision. They, it is presumable, care not to hear a third argument from the bench, for or against them, in support of a judgment

---

[1] [Reprinted by permission.]

with which it is probable but one party will, save upon sober, second thought, if ever, be fully satisfied.

The objections to a discharge, filed and pressed by the opposing creditors, are eleven in number, and under each of them an issue of fact was raised, and evidence and argument were submitted. Of the fourth, fifth, and eleventh specifications I shall first treat, here quoting them: "Fourth. That the said Philip A. Doyle has been guilty of fraud in this: that he has not delivered to his assignee a stock of goods consisting of groceries, liquors, and other articles of great value, which at the time of the presentation of his petition and inventory belonged to him, and were in his possession, in the store occupied by him on Canal street, in said city of Providence; and a beer pump, and other goods and property, in the store now or formerly No. 3 Peck street, in said city of Providence. Fifth. That the said Philip A. Doyle has concealed a part of his estate and effects, namely: the stock of goods aforesaid, and a beer pump, and other goods and property, in the store now or formerly No. 3 Peck street, in said city of Providence, which are not included or mentioned in the schedules filed with his petition." "Eleventh. That the said Philip A Doyle, being a tradesman, has not, subsequently to the passage of the act of congress aforesaid, kept proper books of account; in this, that he has kept no bill-book, or invoice-book, or any other books of account, except a day-book, ledger, and cash-book." The issue raised under these specifications, is one purely of fact. The creditors, assuming the burden of proving their allegations, upon the evidence maintain that the petitioner from the spring of 1854 to the filing of his petition on the 24th of December, 1868, was engaged in the liquor and grocery business, in truth and fact, for himself, though pretendedly and ostensibly as an agent—a portion of the time of one O'Reilly, a merchant tailor, of Providence, and afterwards of one O'Donnell, a liquor dealer of Boston; and accordingly they contend that when he filed his petition, he should have scheduled the goods and effects in the two stores named in the specifications, including the beer pump named, and also all debts due for goods sold from those stores; of course contending also that he was bound to keep, subsequently to the passage of the bankrupt act [of 1867 (14 Stat. 517)], proper books of account. The answer of the petitioner is simply that as to the store on Peck street, he was never the keeper of it, or interested in it, in fact, further than that he procured a license for it in his own name, for the benefit and accommodation of a friend and customer, a Mr. Stewart, to whom the city authorities would not grant a license; though he did (as agent, as he says) procure for use in said store, in August, 1868, and lend or let to Stewart, a beer pump apparatus, costing one hundred and ninety-five dollars cash,

which, since the filing of his petition, he had claimed as his property as agent. And as to the store on Canal street—he says the business prosecuted there was, from the spring of 1864 to the spring or summer of 1865, the business of Owen O'Reilly—he, the petitioner, being simply O'Reilly's agent—and that, since the failure of O'Reilly (as a merchant tailor), the business has been carried on there by a Mr. O'Donnell, of Boston—the petitioner being his agent or hired servant, and nothing more. Therefore, contends he, as he was not owner of the property in that store, or of the beer pump, he could not inventory them as his property—and as he was engaged in no business—neither merchant nor tradesman, he had no occasion, nor was he bound to keep books of account of any kind.

My conclusions upon the proofs and arguments are: Firstly, that the creditors fail to show that the petitioner was interested in any property or effects in the Peck street store, other than the beer pump apparatus. Secondly, that they do show that the business on Canal street, while O'Reilly figured as nominal principal, was in truth the petitioner's—the only object of the arrangements between petitioner and O'Reilly being to enable the former to prosecute for his own gain, undisturbed by his numerous creditors, the business in which he had formerly been engaged, and to which an end was put in December, 1868, by a general assignment for the benefit of creditors, in the very worst form of even Rhode Island assignments, under which it happened, as usual, that no outside creditor ever received a farthing. Third, that the creditors do show, if not that the arrangement with O'Donnell is identically the same as was that with O'Reilly, yet that it most probably was and is the same in fact and in legal effect—no less illusory—no less fraudulent—not less a sham; and thus, in my judgment, imposes upon the petitioner the burden of overthrowing their prima facie case. And lastly, that this prima facie case is not overthrown, if indeed, it be at all weakened, by any proofs adduced by the petitioner, or any argument submitted by his ingenious, learned, and zealous counsel. It may be true that O'Donnell was, in 1868, the owner de facto et de jure, of the Canal street store and its belongings, and of the beer pump in the Peck street store; and it may be that evidence could be adduced corroboratory of the petitioner's somewhat faltering, vague, and discordant declarations and statements in regard to this point. But be this as it may, it is my province to deduce conclusions from the evidence submitted, and that, as I have already stated, not only warrants but dictates a judgment to the contrary. His schedule, rendered under oath in December, 1868, should have disclosed his ownership of the property in question; and as it did not, I adjudge the fourth, fifth, and eleventh specifications sustained by the

proofs, and the petitioner not entitled to his discharge.

In regard to the remaining specifications, it is unnecessary to say much in this connection. It is, however, but justice to the petitioner to say, that I find the ninth and tenth specifications, relating to the claim of William Doyle, to be unsustained; and but justice to the opposing creditors to say, that the evidence submitted in support of the remaining specifications (grounded on the petitioner's omission to assert or disclose in his schedule a title in himself to certain estates, formerly belonging to him, but now claimed to be the property of his wife) fully justifies their suspicions and surmises, if not their formal averments. I, however, refrain from passing upon those specifications, even pro forma, for the reason that upon two or three points of law which seem to me to be involved, and which were not raised at the hearing, it is desirable, before expressing a judicial opinion, to be enlightened by arguments of counsel.

The record of the suit in equity—Peckham v. Doyle [Case No. 10,898]—offered in evidence by the petitioner on the 10th of June, and received de bene, under objection, I adjudge inadmissible, whether regard be had either to its character as evidence, or to the stage of the trial when it was proffered. "Agencies" (so called), like that which I find to have existed between the petitioner and O'Reilly and O'Donnell, successively, were an irrepressible outgrowth of the laws regulating the relations of debtor and creditor, as these existed prior to the enactment of the bankrupt act: and it was reasonably anticipated, as one of the benefits which that act would confer, that these so-called agencies, corrupting and demoralizing to the community at large, as well as to the parties concerned, and their relatives, privies, and employees, would come to an end, throughout the land. Under the beneficent provisions of that act, in July, 1867, the way was open to every man, no matter how heavily burdened by debts, to relieve himself of his pecuniary obligations. He was required simply to be honest, surrendering to his creditors whatever he possessed, and whether his assets yielded to them a dividend small or large, or nothing, he secured to himself a discharge, and became once again a free man. If it should happen, as perchance it might, that a compliance with this requisition, under the pressure of an oath, would necessitate humiliating and damning confessions of deceit and fraud, in days gone by, still the obligation to be honest in word and act must be respected, if a discharge from his debts was desired. The bankrupt act humanely provides relief for the honest, and, not less humanely, prescribes punishment by penalties and privation and disabilities for the knavish. It gives little heed to the antecedents of the petitioner for its benefits. Whatever his offenses against heaven's laws, or man's laws, in the remote past, let him show that since the passage of the bankrupt law its requirements have been respected, and he may confidently, and without harmful self-abasement, claim the exercise in his behalf of its debt-discharging power. This, it must be borne in mind, is a condition-precedent of relief which no court is empowered to waive; and more than this, a requirement with which agent-arrangements between an insolvent debtor and his friends and relatives of easy virtue, or no virtue, such as I find to have existed between the petitioner and O'Reilly and O'Donnell, cannot be made even to appear consistent.